UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SURINDERJIT SINGH BRAR and BALVIR KUAR BRAR, husband and wife,

    Plaintiffs/Counterclaiim Defendants,

v.

THRIFTY PAYLESS, INC.,, a California corporation; and FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation,

    Defendants/Counterclaim Plaintiffs,

v.

AMARJEET SINGH and JASWINDER BRAR, as individuals and a marital community,

    Additional Counterclaim Defendants.

CASE NO. C08-1777RSM

MEMORANDUM DECISION

    Plaintiffs Surinderjit Singh Brar and Balvir Kuar Brar, husband and wife ("the Brars") are residents of Canada. They brought this action in King County Superior Court, seeking the return of earnest money they paid to purchase commercial real estate from defendant Thrifty Payless, Inc., a California corporation ("Thrifty"). A portion of the money is held in escrow by defendant First

MEMORANDUM AND DECISION - 1

American Title Insurance Company, a California corporation. The complaint asserts state law claims of breach of contract and conversion under Washington law. The claim of conversion was not re-asserted in the Pretrial Order and has dropped from the case. Dkt. # 27. Plaintiffs asserted in the Pretrial Order that they would pursue a claim of failure to provide a disclosure statement, but this was never pled as an affirmative defense, and was not pursued at trial   The sole claim in this action is therefore plaintiffs' claim of breach of contract.

The action was removed by defendants to this Court under the diversity jurisdiction provision of 28 U.S.C. § 1332(a). Defendants then counter-claimed against plaintiffs and joined as additional counter defendants the co-buyers on the purchase agreement, Washington residents Amarjeet Singh and Jaswinder Brar.

The matter was tried to the Court in a two-day bench trial commencing on December 14, 2009. The Court has fully considered the evidence presented at trial, the admitted exhibits, and the argument of counsel, and being fully advised, now makes the following Findings of Fact and Conclusions of Law, and renders its decision.

## FINDINGS OF FACT

I. **Undisputed Facts**

The following facts are stipulated as undisputed in the Pretrial Order:

1. As of November 30, 2007, defendant Thrifty Payless, Inc., as Seller, entered into and [sic] Real Property Purchase and Sale Agreement ("the Agreement") with plaintiffs Surinderjit Singh Brar and Balvir Kaur Brar, husband and wife, and additional counterclaim defendants, Amarjeet Singh and Jaswinder Brar, as Buyers.

2. The Agreement called for the sale of certain land and a commercial building located in Kent, King County, Washington for a cash price of $3,200,000.00 to be paid in full at closing.

3. The building was an older building built in 1977 that had been used as retail drug store and had been vacant for some time.

4. Buyers would be required to and planned to remodel and change the building to accommodate their plans for the building.

5. The transaction contemplated in the Agreement was to close not later than January 15, 2008 (the "Original Closing Date").

MEMORANDUM AND DECISION - 2

6. Prior to the Original Closing Date, Buyers applied for loans and marketed the space to potential tenants, including the then present occupant, Liquidation World.

7. Under paragraph 9 of the Agreement, Buyers purchased the building "As Is" without any warranty as to its condition or fitness for any particular use.

> 9. DISCLAIMER AND RELEASE. AS AN ESSENTIAL INDUCEMENT TO SELLER TO ENTER INTO THIS AGREEMENT, BUYER ACKNOWLEDGES, UNDERSTANDS AND AGREES AS OF THE DATE HEREOF AND AS OF THE CLOSING DATE AS FOLLOWS:
>
> A. DISCLAIMER
>
> (1) AS-IS, WHERE-IS. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN PARAGRAPH 8A OR IN THE DEED, THE SALE OF THE PROPERTY HEREUNDER IS AND WILL BE MADE ON AN "AS IS, WHERE IS" BASIS AND SELLER HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY NEGATES AND DISCLAIMS ANY REPRESENTATIONS, WARRANTIES OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE OF, AS TO, CONCERNING OR WITH RESPECT TO THE PROPERTY OR ANY OTHER MATTER WHATSOEVER.

8. The Agreement called for an earnest money deposit to be made by the Buyers in the amount of $100,000, which amounts to 3.125% of the purchase price.

9. Paragraph 3.C. of the Agreement provides, in pertinent part, as follows:

> C. REMEDIES, LIQUIDATED DAMAGES. IF THE CLOSING DOES NOT OCCUR DUE TO THE BUYER'S DEFAULT UNDER THIS AGREEMENT, IT WOULD BE IMPRACTICAL AND EXTREMELY DIFFICULT TO ESTIMATE THE DAMAGES THAT SELLER MAY SUFFER. THEREFORE, THE PARTIES HAVE AGREED THAT A REASONABLE ESTIMATE OF THE TOTAL NET DETRIMENT THAT SELLER WOULD SUFFER IN SUCH EVENT IS AND SHALL BE TITLE COMPANY'S DELIVERY OF THE DEPOSIT TO SELLER AS LIQUIDATED DAMAGES, AS SELLER'S SOLE AND EXCLUSIVE REMEDY UNDER THIS AGREEMENT (SUBJECT TO THOSE PROVISIONS OF THIS AGREEMENT, WHICH, BY THEIR EXPRESS TERMS SURVIVE THE TERMINATION OF THIS AGREEMENT). SUCH LIQUIDATED DAMAGES ARE NOT INTENDED AS A FORFEITURE OR PENALTY WITHIN THE MEANING OF APPLICABLE LAW. . . . .

10. Buyer was unable to close on the Original Closing Date due to their collective inability to raise the funds needed to pay the cash purchase price.

11. As of January 23, 2008 Seller and Buyer entered into an Addendum to Real Property Purchase Agreement (the "Addendum").

12. Buyer requested and Seller agreed to extend the Original Closing Date called for in the Agreement on the terms and conditions set forth in the Addendum.

13. Paragraph 1 of the Addendum extended "the outside date for closing the transaction contemplated by the Purchase Agreement . . . to Wednesday, April 30, 2008 (the "Extended

MEMORANDUM AND DECISION - 3

Closing Date") subject to Buyer's compliance with" the terms of the Addendum.

14. Paragraph 2 of the Addendum called for immediate release of the original $100,000 deposit to Seller as follows:

> 2. Release of Deposit. "Borrowers [sic] shall immediately cause the existing Deposit in the amount of $100,000 to be released to Seller. Such Deposit shall be non-refundable to Buyer except in the event of Seller's default under the Purchase Agreement, but applicable to the Purchase Price so long as closing occurs on or before the Extended closing Date.

15. Paragraph 3 of the Addendum required Buyer to make an additional $300,000 deposit as follows:

> 3. Additional Deposit. On or before 2:00 p.m. (Pacific Time) on January 29, 2008, Buyer shall deposit with the Title Company an additional deposit in the amount of Three Hundred Thousand Dollars ($300,000)(the "Additional Deposit"). The Additional Deposit shall be held by the Title Company in accordance with the terms of Paragraph 3 C of the Purchase Agreement. The Additional Deposit shall be non-refundable to Buyer except in the event of Seller's default under the Purchase Agreement, but applicable to the Purchase Price so long as closing occurs on or before the Extended Closing Date.

16. Buyers paid a total of $400,000 of earnest money, of which $100,000 was paid to Thrifty, and $300,000 is held by First American. Brar paid $399,985 and Singh paid $15.

17. Prior to the Extended Closing date, Buyers or their agents had indicated to Liquidation World that they wanted to purchase some of the items being stored there and asked that they not be removed. The name, Amar, was put on those boxes.

18. A serious dispute arose between and among the Buyers with regard to the payments required of Buyers collectively to close the purchase as called for in the Purchase Agreement.

19. The Buyers were unable or unwilling to come up with the money necessary to complete the purchase transaction.

20. There was no financing contingency provision in the Agreement.

21. Buyers failed to deposit into escrow the Closing Payment and the documents required to Close the transaction on or before the Extended Closing Date.

22. Prior to the Extended Closing Date Seller was told by Buyer's agent that the Buyer's partnership had gone bad, but that Plaintiffs wanted to close the deal. As late as September 17, 2008, Brar was still trying to buy the building and had his broker present a new earnest money agreement.

23. The transaction failed to Close.

24. Seller executed and tendered to the Title Company all documents necessary to close the transaction.

25. The dispute between the Buyers led to the filing of a separate lawsuit in King County Superior Court wherein Surinderjit Singh Brar, Balvir Kaur Brar (plaintiffs in this case) and 555

MEMORANDUM AND DECISION - 4

Washington LLC, a Washington limited liability company, are the plaintiffs and Amarjeet Singh and Jaswinder Kaur Brar, (additional counterclaim defendants in this case) are the defendants. *Surinderjit Singh Brar; Baliver Kaur Brar; 555 Washington, LLC v. Amarjeet Singh and Jaswinder Kaur Brar*, King County Cause No. 08-2-26196-4 KNT. (Hereafter, *Brar v. Singh*)

26. In *Brar v Singh* plaintiffs allege that defendants in that case had improperly converted some $150,000 of funds needed for the transaction and were unable or unwilling to come up with the money necessary to complete the purchase transaction causing the purchase transaction to fail.

The allegations of the Plaintiffs in their Complaint in that case include the following:

> Defendants Fail to Perform
>
> 3.24 Shortly before the scheduled closing on April 30, 2008, Defendants informed Kelley Garvey, the parties' real estate agent, that he was unable or unwilling to produce his share of the funds necessary to close the transaction;
>
> 3.25 In the weeks and months preceding Defendants' failure, Amrujeet [sic] explicitly reassured Plaintiffs of his ability to produce his share of the funds necessary to close the transaction by referencing his allegedly extensive landholdings in King County and representing his ability to draw equity from these properties to meet his obligation;
>
> 3.26 In the weeks and months preceding Defendants' failure, Amarjeet consistently refused Plaintiffs' offer to allow him to assign his interest or to assist him in finding a third party who was ready, willing and able to meet Amrujeet's [sic] obligations under the purchase and sale agreement;
>
> 3.27 Due to Defendants' failure to meet their contractual obligations, Plaintiffs have now lost or will potentially lose the $395,985 in earnest money they deposited in escrow or 18 [sic] with the seller in this matter;
>
> 3.28 Due to Defendants' failure to meet their contractual obligations, Plaintiffs have lost the opportunity to purchase the subject property and have suffered foreseeable damages, including their expectation and lost profits, as a result;
>
> 3.29 Due to Defendants' failure to meet their contractual obligations, Plaintiff have suffered or will suffer damages in the form of costs and fees incurred to force a return of the disputed earnest money and costs and fees incurred to obtain an accounting of the converted $150,000 as well as a judgment for the same.

27. Paragraph 11.E. of the Agreement provides for recovery of attorneys fees by the prevailing party in any action to enforce the Agreement.

Agreed Pretrial Order, Dkt. # 32, Admitted Facts, ¶¶ 1-27.

## II. **The Court's Factual Findings**

The Court finds the following additional facts from the evidence presented. The Court notes that neither plaintiff (Mr. or Mrs. Brar) testified, nor did counter defendants Mr. Singh or his wife.

MEMORANDUM AND DECISION - 5

1.  Kelly Garvey, a commercial real estate broker who acted on behalf of Mr. Brar and Mr. Singh, testified regarding his role in the transaction.

2.  On August 16, 2007, Mr. Garvey sent to Mr. Brian Engelking (of Rainier Commercial Real Estate) a Letter of Intent ("LOI") to purchase the property, signed by Mr. Singh. Ex. A-1. The letter was for Mr. Engelking, listing agent for the property, to present to Linda Brubeck, Senior Manager of the Real Estate Division for Payless Drugstores, of which Thrifty is a subsidiary. A revised LOI, also signed by Mr. Singh and initialed by him, was sent by Mr. Garvey to Mr. King on October 2, 2007. Ex. A-6.

3.  The Purchase and Sale Agreement was signed by the buyers on November 27 and 28, 2007, and included as additional buyers Mr. Brar and his wife, as indicated in Agreed Fact No. 1 above.

4.  Mr. Singh was at this time a licensed real estate broker.

5.  Mr. Garvey testified that before the Purchase and Sale Agreement was signed, he inspected the property once with Mr. Singh, and again with both Mr. Brar and Mr. Singh, together with an architect and an engineer. Mr. Garvey did not recall seeing cracks in the floor at that time. The store fixtures had been removed and the floor tile was still in place except where the fixtures had been removed.

6.  The December 17, 2007 appraisal, based on a final inspection made November 6, 2007, described the building as vacant at that time. Defendant's Exhibit 13 (A-13). The drugstore shelving had been removed, leaving gaps in the flooring which are evident in the photographs. The report evaluated the condition of the vinyl tile floor as "poor" and in need of replacement. *Id*.

7.  At some time in late 2007 Liquidation World, Inc. ("LWI"), began using the building for storage of liquidated merchandise. In a December 27, 2007 questionnaire prepared for an environmental assessment, Brian Engelking described the current use of the property as "vacant—temporary storage/warehouse of retail goods." Ex. A-19.

8.  Mr. Garvey and the buyers (Mr. Singh and Mr. Brar) were aware that the space was being used for storage by Liquidation World. On January 2, 2008, Mr. Garvey responded to an inquiry from Mr. Engelking that "I've talked to Liquidation World. We're fine." Ex. A-22.

MEMORANDUM AND DECISION - 6

9. Bill Miller, a former employee of Liquidation World, testified that Mr. Singh came to the building two to three times a week in December, 2007. Mr. Singh asked that his name be placed on boxes of merchandise which he wished to buy from LWI. Copies of photographs of Mr. Singh's labels on the cartons of merchandise were attached to a letter sent by Thrifty's counsel Robert Horvat to Mr. Garvey on April 29, 2008. Plaintiff's Exhibit 11 (Ex. 11).

10. Mr. Garvey testified that by the middle of April, 2008, he was aware of a breakdown in the partnership between Mr. Singh and Mr. Brar. He advised Mr. Engelking of this on April 1, 2008, stating that both parties wished to buy the building, but neither wanted to buy in partnership with the other. Ex. A-32. He also stated that both buyers were aware that if they did not reach an agreement, the $400,000 earnest money would be lost. *Id*. Mr. Garvey continued to try to work with both buyers and reminded Mr. Singh on April 22 of the need to come up with funds for the purchase by April 25 so that it could be deposited into escrow the following week. Ex. A-34, A-36.

11. Each buyer retained counsel. On April 24, 2008, Greg Haffner, counsel for Mr. Singh, sent a letter to Thrifty and its counsel Mr. Horvat, claiming that Thrifty was in default of Section 8E of the Purchase and Sale Agreement, which provided that "Seller shall maintain the Property in the same manner as prior hereto pursuant to its normal course of business. . . subject to reasonable wear and tear." The basis of the claimed default was LWI's use of the building for storage of cartons of merchandise, and alleged resultant damage to the floor of the building from the pallets holding the cartons, or forklift use. Counsel suggested extending the closing date by two months to allow for repair of the damage to the floor. A copy of this letter is included in Plaintiff's Exhibit 5.

12. On April 24, Brian Wichmann, counsel for Mr. Brar wrote to Mr. Haffner that as a result of Mr. Singh's default claim, Thrifty would no longer consider selling the property to Mr. Brar. He stated that if the deal failed to close on April 30 and the earnest money was lost, Mr. Brar would seek to recover the entire amount from Mr. Singh. Ex. A-37.

13. On April 25, Mr. Horvat, counsel for Thrifty, responded to Mr. Haffner's letter of default, denying that the use of the property by LWI was a breach of the purchase agreement. Ex. A-38. He stated that any damage to the floor would be repaired prior to the closing date of April 30, and noted that

MEMORANDUM AND DECISION - 7

Mr. Singh was "fully aware" of the use of the property by LWI as he had been negotiating with LWI to continue the lease. *Id*.  Mr. Horvat also asserted that Mr. Singh had been "trespassing on the property for some time now" and demanded that he cease doing so and surrender any keys in his possession.  He stated that  "[a]ny further entry by [Mr. Singh] or any of the other sellers or buyer brokers onto the property prior to closing will be deemed to be criminal trespass. . . " *Id*.  Mr. Horvat also demanded that Mr. Singh remove a "For Lease" sign he had placed on the property. *Id.*

14. Linda Brubeck, Senior Manager of the Real Estate Division for Payless Drugstores, testified that she first learned that LWI was using the building to store merchandise on April 25.  On that day she called Mr. Gillespie of LWI to discuss the situation with him.  She then memorialized what she learned from Mr. Gillespie in an e-mail to Mr. Horvat. Ex. 5.  This included the fact that LWI had been using the building for five to six months, that Mr. Singh had been negotiating with LWI to extend the lease for five years, that Mr. Singh's partner was the one who put up the earnest money of $400,000, and that "all of these people have keys to the building." *Id.*  Mr. Gillespie also stated that all of LWI's merchandise could not be removed by April 30 as promised. *Id*.

15. April 25, 2008 was a Friday.  Ms. Brubeck testified that work on the floor began over the weekend, with LWI removing merchandise by the truckload. As the pallets were removed, the old tile was removed, the floor was scraped clean, and new tile was installed.  Ms. Brubeck testified she was unaware of any cracks in the concrete under the tiles and believed that any floor cracks were in the tiles themselves.  However, her April 29, 2008 e-mail to Mr. Engelking described photographs of the space as "disturbing" and asked if Mr. Engelking remembered "if there was a large crack across the floor when you showed the space." Ex. 12.

16. The floor repair was not completed on April 30.  The total bill for the repairs, once they were completed, was $185,000.

17. Defendant's expert Dennis Parr, a licensed engineer, evaluated the floor on May 28, 2008 at the request of Donna Ferrara of Jess Construction.  He testified that the purpose of the structural evaluation was to determine whether Thrifty might have a claim against LWI for damage to the floor. Mr. Parr found no excessive loading had occurred, as measured by deflection of the floor.  He stated that

MEMORANDUM AND DECISION - 8

concrete always shrinks and cracks over time, but that none of the cracks in the concrete were the result of forklift traffic or excessive loading by LWI's activities. Many of the cracks were straight-line saw joint cracks which are purposely made to ensure that the slab cracks as intended, similar to expansion joints. There were signs of many old cracks that had been filled. Regarding the crack shown in a photograph presented at Ex. 22, Mr. Parr stated that it followed an electrical raceway in the slab, and that it probably formed within five years after the slab was poured. He noted that such cracks are not unusual, they are an expected consequence of embedding electrical raceways in a floor, and do not prevent the slab from performing its job.

18. Plaintiff presented no rebuttal evidence to controvert Mr. Parr's expert opinion. There is no evidence in the record that LWI's use of the building caused the large jagged crack in the slab shown in photographs at Ex. 22.

19. Paragraph 6A of the Purchase and Sale Agreement required that seller and buyer should each deliver specified documents and payment into escrow by 11:00 Pacific Time the day prior to closing.

20. Thrifty delivered the required documents into escrow prior to 11:00 am on April 29 as required. No payment was tendered by the buyers, nor were any documents delivered to escrow on April 29. Mr. Horvat e-mailed Mr. Garvey later on April 29 to declare the buyers in default of the Purchase and Sale Agreement, and to demand that the buyers immediately submit their required closing documents. Ex. 11. Mr. Horvat further stated that Thrifty remained ready, willing, and able to close the following day, and would have all merchandise removed, and the floor repaired, by noon on April 30. He stated that the buyers would be allowed to inspect the property at 1:00 pm on April 30, but that such inspection right would not extend the closing date beyond April 30. *Id*.

21. On April 30, Mr. Brar communicated with Linda Lau, escrow agent at First American Title Company, regarding depositing his one-half of the purchase price into escrow. He wanted to confirm that the money would be returned if the transaction did not close. Ex. A-54. Ms. Lau confirmed that money wired that day would be refunded, but not the $400,000 in earnest money. *Id*. Brian Wichmann, Mr. Brar's counsel, joined in the e-mail communication to confirm that the amount required of Mr. Brar

MEMORANDUM AND DECISION - 9

for his one-half share would be $1,203,428.32, and Ms. Lau confirmed that amount. Ex.A-56.

22. Mr. Engelking testified that no funds were wired into escrow by Mr. Brar on April 30.

23. Mr. Engelking also testified regarding the inspection on April 30. He arrived before noon and observed that floor tile was still being removed, but that ninety to ninety-five percent of the pallets were gone. He recalled seeing cracks in the concrete slab, but did not recall more than one large jagged crack; the others were straight lines. When asked if the floor had been restored to its original condition at that time, he responded "no".

24. According to Mr. Engelking's notes, Mr. Garvey arrived for the inspection at 1:30 pm, without his clients. Ex. 23. He left at approximately 2 pm.

25. At 1:55 pm on April 30, Mr. Horvat sent an e-mail to Mr. Singh, Ms. Lau, Mr. Garvey, Mr. Engelking, Mr. Haffner, Mr. Wichmann, and others, with an attached letter to the four buyers declaring them in default of the Purchase and Sale Agreement for failure to timely submit the required documents and balance of the purchase price into escrow. Ex. A-58. Mr. Horvat stated, "As a result of such default, Seller hereby terminates the Purchase Agreement." *Id*. He demanded release to Thrifty of the $300,000 in earnest money held by the escrow company. *Id*.

26. Subsequent efforts to reconstruct a sales agreement between Mr. Brar and Thrifty failed.

27. The Court finds the testimony of the witnesses highly credible. To the extent there was any discrepancy between testimony and the documentary evidence, it may be attributed to an excusable lapse in memory.

CONCLUSIONS OF LAW

Having found these facts from the evidence presented, the Court now makes the following Conclusions of Law:

1. The Court has jurisdiction of the matter pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy is greater than $75,000. Venue is proper in this district as it is the location of the transaction and the property at issue here.

2. In order to prevail on their breach of contract claim under Washington law, plaintiffs have the

MEMORANDUM AND DECISION - 10

burden of proving, by a preponderance of the evidence, the existence of a valid contract, a breach by the other party, and damages. A party seeking to enforce the terms of a contract, or to recover damages for the breach of a contract, has the burden of proving that all conditions precedent or conditions concurrent to the other party's duty to perform under the contract have been fulfilled or that such fulfillment was excused.

      3. When the duties of two parties are to be performed simultaneously, as with the exchange of money for property, "[t]he promise of each is conditional upon a tender of performance by the other." 3A Corbin, Contracts § 629, at 19. "If a contract requires performance by both parties, the party claiming nonperformance of the other must first establish as a matter of fact the party's own performance." *Willener v. Sweeting*, 107 Wn.2d 388, 392, 730 P.2d 45 (1986). In a contract for the sale of land, for example, the payment of the purchase price and the delivery of the deed are typically concurrent conditions, and the vendor "may not put the buyer in default until the vendor has offered to perform." *Wallace Real Estate Inv., Inc. v. Groves*, 124 Wn.2d 881, 887, 881 P.2d 1010 (1994). In such cases, "[a]n actual tender of performance may be excused when there is a willingness and an ability to perform, and actual performance has been prevented or expressly waived by the party to whom performance is due." *Kane v. Borthwick*, 50 Wash. 8, 12, 96 P. 516, 518 (1908), *quoted in Carlson v. Leonardo Truck Lines*, Inc., 13 Wn.App. 795, 538 P.2d 130 (1975) (holding plaintiff not entitled to sue repudiating seller for breach of contract when plaintiff failed to meet burden of proving it could have obtained the amount required for payment on the date fixed for performance).

      4. Plaintiffs' contention that Thrifty "did not meet its burden of proving that the buyers repudiated the agreement," that Thrifty failed to maintain the property in its existing condition up to closing and therefore was not ready, willing and able to perform (Plaintiffs' Proposed Findings of Fact and Conclusions of Law ¶¶7-9) is incorrect.

      5. Mr. Singh clearly repudiated the agreement when he sent his notice of default to Thrifty.

      6. Mr. Singh's contention that Thrifty breached the sales agreement by allowing LWI to use the space for storage fails. This use was not a material breach of the sales agreement.

      7. A "material breach" is a breach that is serious enough to justify the other party in abandoning

MEMORANDUM AND DECISION - 11

the contract. A "material breach" is one that substantially defeats the purpose of the contract, or relates to an essential element of the contract, and deprives the injured party of a benefit that he or she reasonably expected. "A breach or non-performance of a promise by one party to a bilateral contract, so material as to justify a refusal of the other party to perform a contractual duty, discharges that duty." *Jacks v. Blazer*, 39 Wn.2d 277, 235 P.2d 187 (1951). A material breach sufficient to allow rescission of a contract is one that "substantially defeats the purpose of the contract." *Mitchell v. Straith*, 40 Wn.App. 405, 410, 698 P.2d 609 (1985). LWI's use of the space for storage of merchandise did not substantially defeat the purpose of the contract.

    8. To any extent that LWI's use of the building might be considered a breach of the agreement, Mr. Singh waived any objection to that use by acquiescing in it and by negotiating with LWI to continue a lease.

    9. Where the parties' duties are concurrent, a purchaser may not rescind a contract without a tender of the purchase price. *Willener,* 107 Wash. 2d at 395. Plaintiffs, as the party claiming nonperformance of Thrifty, must first establish, as a matter of fact, their own performance. *Id.* at 392.

    10. Thrifty was ready, willing and able to perform its duties under the contract, and did in fact perform by timely delivery of the deed and other required documents into escrow by 11:00 am on April 29, 2009.

    11. Plaintiffs breached the Purchase and Sales Agreement by failing, without legal excuse, to deliver funds and signed documents into escrow on April 29, 2008 as provided in Paragraph 6A of the Agreement.

    12. The Court finds that plaintiffs have not met their burden of proving, by a preponderance of the evidence, that they performed as required on April 29, or that their performance was expressly waived by Thrifty.

    13. Thrifty is entitled, under Paragraphs 2 and 3 of the Addendum to the Purchase and Sales Agreement executed in January 2008, and set forth above in the undisputed facts, to retain the original $100,000 non-refundable deposit as well as the additional $300,000 non-refundable deposit. Defendant First American Title Insurance Company is hereby directed to release the $300,000 deposit, which has

MEMORANDUM AND DECISION - 12

been held in escrow, together with any accrued interest, to defendant Thrifty.

13. Thrifty is entitled, under Paragraph 11.E of the Purchase and Sales Agreement, to legal costs and fees as set forth therein. Defendant shall file a motion for award of costs and fees, together with a statement of such costs and fees, within twenty days of the date of this Order.

## DECISION OF THE COURT

The Court finds in favor of defendants in this matter. The Clerk shall enter judgment accordingly.

Dated this 12th day of March, 2010.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

MEMORANDUM AND DECISION - 13